UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re ) | Case No. 11-19428 |
| ) | |
| CASTLE HOME BUILDERS, INC., *et al.* ) | Jointly Administered |
| ) | |
| Tax ID No. xx-xxx1614 ) | Chapter 11 |
| ) | |
| ) | Judge Jacqueline P. Cox |

# Exhibit F

David M. Giangrossi (Illinois Bar No. 3124350)
Stephen J. Brown (Illinois Bar No. 6257366)
Michael J. Faley (Illinois Bar No. 6277443)
Schuyler, Roche & Crisham, P.C.
Legal Counsel to the Debtors
130 East Randolph Street, Suite 3800
Chicago, Illinois 60601
Tel:   (312) 565-2400
Fax:   (312) 565-8300
Attorney No. 47074

782726

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made as of the 12th day of December, 2011, by and among **CASTLE HOME BUILDERS, INC.** ("Castle Home"), an Illinois corporation, **TAMMY JO LONG** ("Long" and together with Castle Home, the "Debtors"), and **AMERIS BANK** ("Ameris Bank," and together with the Debtors, the "Parties"), a National Association duly organized under the laws of the State of Georgia.

RECITALS:

A.  Prior to May 6, 2011, the Debtors executed and delivered to Darby Bank & Trust Co. ("Darby Bank") certain promissory notes and guaranties, the repayment of which were secured by certain security deeds, as renewed and modified from time to time, and that certain commercial security agreement. A description of and defined terms identifying the foregoing instruments are contained in the Parties' Stipulations of Fact for Trial (the "Stipulations"), dated November 14, 2011, a copy of which is attached to this Agreement as **Appendix A** and incorporated wholly by reference herein.

B.  On November 12, 2010, Darby Bank was closed by the Georgia Department of Banking and Finance (the "GDBF"), which appointed the Federal Deposit Insurance Corporation (the "FDIC") as Darby Bank's receiver. The FDIC accepted the appointment as receiver of Darby Bank pursuant to 12 U.S.C. § 1821(c)(3)(A) and seized control over Darby Bank as of November 12, 2010.

C.  On November 12, 2010, the FDIC as receiver of Darby Bank, entered into a Purchase and Assumption Agreement (the "Purchase and Assumption Agreement") with Ameris Bank in which the FDIC conveyed, sold, and assigned all right title and interest of the FDIC in and to all of the assets of Darby Bank. Pursuant to the Purchase and Assumption Agreement, the FDIC conveyed, sold, and assigned to Ameris Bank all right, title, and interest of the FDIC in and to all of the assets of Darby Bank, which included Note 1506210, Note 1051980, Note 1157720, the Guaranties, the Wedding Cake Security Deed, the Liberty Security Deed, the Barnard Security Deed, the Captain's View Security Deed, the Jones Street Security Deed, the Commercial Security Agreement, and the Commercial Security Agreement Related Documents (as those capitalized terms are defined in the Stipulations).

D.  On or about December 22, 2010, the FDIC executed three assignments (collectively, the "Assignments") in favor of Ameris Bank, to be deemed effective as of November 12, 2010. Pursuant to the Assignments, the FDIC granted, bargained, sold, assigned, transferred, and set over unto Ameris Bank all of the FDIC's rights, title, and interests in and to the Taylor Security Deed, the Barnard Security Deed, the Captains View Security Deed, the Liberty Street Deed, the Commercial Security Agreement, the Commercial Security Agreement Related Documents, and all other instruments securing loans owned by Darby Bank and held of record by Darby Bank or any of its predecessors in interest as of November 12, 2010, plus all underlying debts described in such security deeds and instruments, as more fully described in the Assignments.

E.  As described more fully in the Stipulations, (i) Castle Home has failed to timely make payments and material defaults have occurred under each of Note 1506210, Note 1051980, and Note 1157720; and (ii) Long has failed to make full and punctual payment or otherwise satisfy Castle Home's indebtedness under Note 1506210, Note 1051980, and Note 1157720 and, therefore, is liable for all amounts owed by Castle Home under Note 1506210, Note 1051980, and Note 1157720.

F.  On February 10, 2011, Ameris Bank filed a complaint against Castle Home and Long in the United States District Court for the Southern District of Georgia, Savannah Division as Case No. CV411-030 (the "Georgia District Court Litigation"), alleging breach of contract as to each of Note 1506210, Note 1051980, Note 1157720, and the Guaranties, and seeking specific enforcement of the collection of rents from real property located at 14 East Taylor Street, Savannah, Georgia ("Wedding Cake Mansion") and 107 West Liberty Street, Savannah, Georgia ("107 West Liberty"). On March 28, 2011, Castle Home and Long filed an answer and affirmative defenses to that complaint.

G.  At all times relevant, as described more fully in the Stipulations, the Debtors claimed that, on December 2, 2009, Darby Bank assigned Castle Home's loans to 1732 Financial LLC ("1732") and that, as the result of a settlement agreement between Castle Home and 1732 that was negotiated after Darby assigned the loans to 1732, the Debtors' indebtedness under Note 1506210, Note 1051980, and Note 1157720 was satisfied.

H.  At all times relevant, Ameris Bank denied that Darby Bank had assigned Note 1506210, Note 1051980, or Note 1157720 to 1732, denied that Debtors had entered into an agreement with 1732 which satisfied or otherwise discharged Debtors' indebtedness under Note 1506210, Note 1051980, or Note 1157720, and denied that Debtors could enforce any such agreement against Ameris.

I.  On May 6, 2011 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"), which bankruptcy cases are currently being jointly administered under lead Case No. 11-B-19428 (the "Bankruptcy Cases").

J.  As of the Petition Date, the Debtors were indebted to Ameris in the total amount of $5,770,413.28 in unpaid principal, accrued and unpaid interest, late charges, and attorney's fees under Note 1506210, Note 1051980 and Note 1157720 (the "Indebtedness")

K.  On May 26, 2011, the Debtors filed their *Motion for Entry of a Final Order Authorizing Debtor's Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code* [Dkt. 24] (the "Motion to Use Cash Collateral"). On June 1, 2011, Ameris Bank filed its *Limited Objection to the Motion to Use Cash Collateral* [Dkt. 29] (the "Objection to Cash Collateral Motion").

L.  On August 2, 2011, Ameris Bank filed its *Motion for Relief From the Automatic Stay to Continue the Enforcement Action* [Dkt. 69] (the "Motion for Relief From Stay"). On

2

August 8, 2011, the Debtors filed their *Response and Opposition to the Motion for Relief From Stay* [Dkt. 73] (the "Debtors' Response to Motion for Relief From Stay").

M.  On September 1, 2011, Ameris filed Proof of Claim No. 8-1 in Castle Home's bankruptcy case, which it later amended on November 15, 2011 by filing Amended Proof of Claim No. 8-2 (collectively, the "CHB Proof of Claim").

N.  On September 7, 2011, Ameris filed Proof of Claim No. 9-1 in Long's bankruptcy case, which it later amended on November 15, 2011 by filing Amended Proof of Claim No. 9-2 (collectively, the "Long Proof of Claim").

O.  On October 5, 2011, the Bankruptcy Court entered its *Amended Agreed Order Establishing Pretrial Schedule* [Dkt. 116] (the "Scheduling Order"), which, among other things, set a trial on the Motion to Use Cash Collateral and the Motion for Relief From Stay on November 17-18, 2011 (the "Trial").

P.  On October 31, 2011, the Debtors filed their *Complaint, Objection to Claim, request for Alternative Declarative Relief, and Counterclaims to Claim* against Ameris Bank, which began Adversary No. 11-A-0231 (the "Adversary Proceeding").

Q.  Before the Trial commenced, the Debtors, on the one hand, and Ameris Bank, on the other hand, have agreed to fully, finally, and completely settle the Debtors' and Ameris Bank's claims upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein, the receipt and sufficiency of which are hereby mutually acknowledged, and the foregoing recitals, which are incorporated herein by this reference, Castle Home, Long, and Ameris agree as follows:

1.  **Approval of the Bankruptcy Court.** The Parties agree and acknowledge that this Agreement is conditioned upon and subject to approval by the Bankruptcy Court presiding over the Bankruptcy Cases. In the event that the Bankruptcy Court does not approve this Agreement, it shall be of no further force and effect. The calendar date upon which the Bankruptcy Court enters an order approving this Agreement shall be the "Effective Date" of this Agreement.

2.  **Admissions by the Debtors.** In addition to the Stipulations and the Recitals herein, the Debtors hereby acknowledge, agree, and admit to each and every one of the following, all of which may be used by Ameris Bank for any purpose whatsoever as binding admissions against the Debtors:

    (a) Ameris holds all right, title, and interest to Note 1506210, Note 1051980, Note 1157720, the Guaranties, the Wedding Cake Security Deed, the Liberty Security Deed, the Barnard Security Deed, the Captain's View Security Deed, the Jones Street Security Deed, the Commercial Security Agreement, and the Commercial Security Agreement Related Documents;

    (b) 1732 does not now hold, and never at any time before has held, any right, title, or interest in or to Note 1506210, Note 1051980, Note 1157720, the

Guaranties, the Wedding Cake Security Deed, the Liberty Security Deed, the Barnard Security Deed, the Captain's View Security Deed, the Jones Street Security Deed, the Commercial Security Agreement, or the Commercial Security Agreement Related Documents;

(c) 1732 has never satisfied, released, or otherwise discharged the Debtors' indebtedness under Note 1506210, Note 1051980 or Note 1157720;

(d) The CHB Proof of Claim and the Long Proof of Claim, as well as all underlying instruments described therein, are valid, enforceable claims against the Debtors, except as modified by this Agreement, and shall be allowed in full against the Debtors' estates;

(e) The Debtors do not object to the CHB Proof of Claim and the Long Proof of Claim, as modified by this Agreement, for any reason whatsoever; and

(f) As of the Petition Date, the Debtors were indebted to Ameris Bank in the total amount of $5,770,413.28 in unpaid principal, accrued and unpaid interest, late charges, and attorney's fees under Note 1506210, Note 1051980, and Note 1157720.

3. **No Automatic Stay.** Except as otherwise provided in this Agreement, upon the Bankruptcy Court's entry of an order approving this Agreement, the Parties agree that the automatic stay provisions of section 362 of the Bankruptcy Code are immediately vacated and modified without any further order of the Court to the extent necessary to permit Ameris Bank to exercise any one or more of its Rights upon the occurrence of any Event of Default (as those capitalized terms are defined herein).

4. **Documents to be Delivered.** As used in this Agreement, the term "Escrow Agent" shall mean the law firm of Ellis, Painter, Ratterree & Adams, LLP, in its capacity as escrow agent. The Parties hereby designate and appoint Ellis, Painter, Ratterree & Adams, LLP as Escrow Agent. The Debtors shall execute and deliver to the Escrow Agent within five (5) business days the documents described at subparagraphs (a) and (b), below. Ameris Bank shall execute and deliver to the Escrow Agent within five (5) business days the documents described at subparagraph (c) below. For the avoidance of doubt, the delivery of documents to the Escrow Agent shall not constitute delivery of documents to either Party, and the Escrow Agent shall not deliver documents to either Party except as instructed by Ameris or otherwise provided herein.

(a) A deed in lieu of foreclosure for 107 West Liberty Street (the "107 West Liberty Deed"), a true and correct copy of which is attached to this Agreement as **Exhibit 1**; and

(b) A deed in lieu of foreclosure for the Wedding Cake Mansion (the "Wedding Cake Mansion Deed"), a true and correct copy of which is attached to this Agreement as **Exhibit 2**.

4

(c) A quitclaim deed for partial release which releases Ameris' lien on the Wedding Cake Mansion ("Quitclaim Deed"), but preserves Ameris' lien upon the FF&E (as that term is defined below).

In the event that any notice or instruction is sent by Ameris to the Escrow Agent, all other Parties hereto shall be copied with such correspondence.

5. **107 West Liberty.** Ameris Bank may, in its sole discretion, sell 107 West Liberty under the power of sale contained in the Liberty Security Deed or accept delivery of the 107 West Liberty Deed and market 107 West Liberty for sale. Under either option, Ameris Bank shall apply the net sales proceeds against the Indebtedness. In the event Ameris Bank elects to sell 107 West Liberty under the power of sale contained in the Liberty Security Deed, Ameris Bank shall be entitled take all steps necessary to preserve its deficiency. Ameris will refrain from accepting delivery of the 107 West Liberty Deed or selling 107 West Liberty under the power of sale contained in the Liberty Security Deed until February 1, 2012.

6. **Payments by the Debtors.** The Parties hereby agree that the value of the Wedding Cake Mansion for purposes of this Agreement shall be One Million Four Hundred and Fifty Thousand Dollars ($1,450,000.00), to be paid consistent with subparagraphs (b) and (c) below. In exchange for the consideration given by Ameris Bank in this Agreement, the Debtors shall make the following payments to Ameris Bank in order to reduce the Indebtedness:

(a) By February 17, 2012, the Debtors shall pay $20,560.46 (the "Tax Payment") to Ameris Bank, which sum represents all taxes paid on behalf of the Debtors relating to either 107 West Liberty or the Wedding Cake Mansion;

(b) By February 17, 2012, the Debtors shall make or cause to be made to Ameris Bank a payment in the amount of nine-hundred-eighty-thousand and xx/100 dollars ($980,000) (the "Lump Sum Payment");

(c) Beginning on March 17, 2012, and on or before the seventeenth calendar day of each month thereafter for eleven months, the Debtors shall make or cause to be made to Ameris Bank a payment of thirty-nine-thousand-one-hundred-sixty-seven and xx/100 dollars ($39,166.66) such that the total amount of these payments equals four-hundred-seventy-thousand-four and xx/100 dollars ($470,000) (each, a "Monthly Installment Payment" and collectively, the "Monthly Installment Payments"); and

(d) Beginning on January 1, 2012, the Debtors shall pay over to Ameris Bank all rental income or other revenues received from 107 West Liberty on or after December 12, 2012.

7. **Forbearance Period.** Ameris Bank agrees that it shall forbear from exercising its Rights Upon Default (as that term is defined below) through and including February 17, 2012 (the "Forbearance Period"). Thereafter, unless there exists any Event of Default (as that term is defined below), the Forbearance Period shall be automatically extended until the seventeenth calendar day of the following month.

8. **Reissuance of Insurance Check.** The Debtors shall work in good faith to obtain the reissuance of insurance proceeds previously issued in connection with property damage which occurred at 107 West Liberty Street on or about August 15, 2009, and shall deliver such proceeds to Ameris Bank.

9. **Payment of Taxes and Discharge of Liens.** Any plan of reorganization (a "Plan") in these Bankruptcy Cases must pay in full all taxes owed or owing to any government unit for (a) the Wedding Cake Mansion, which accrue or accrued while in the Debtors' possession; and (b) for 107 West Liberty Street, which accrue or accrued while in the Debtors' possession.

10. **Segregation of Wedding Cake Mansion Receipts.** Until the Debtors have made the Lump Sum Payment and the Tax Payment to Ameris Bank, the Debtors agree to segregate all receipts generated by, received from, or otherwise related to operation of the Debtors' business at the Wedding Cake Mansion (the "Wedding Cake Mansion Receipts") by depositing the Wedding Cake Mansion Receipts into a segregated bank account that is kept separate from all other receipts. The Debtors shall be permitted to use the Wedding Cake Mansion Receipts only for the following specifically delineated purposes unless and until the Debtors have made the Lump Sum Payment and the Tax Payment (the "Wedding Cake Mansion Expenses"):

   (a) To pay those expenses actually incurred at the Wedding Cake Mansion; and

   (b) If all necessary and reasonable expenses actually incurred at the Wedding Cake Mansion are paid, then, to pay a proportionate share of common expenses incurred by Castle Home that is attributed to the Wedding Cake Mansion, which proportionate share shall be determined by dividing (i) the amount of the common expense, by (ii) the number of real properties benefitted or affected by the common expense.

11. **No Waiver of Ameris Bank's Right to Object.** The occurrence of the Lump Sum Payment and the Tax Payment shall not negate, and Ameris Bank does not waive, Ameris Bank's lien upon the Wedding Cake Mansion Receipts that were segregated on or before the date that the Lump Sum Payment and the Tax Payment are made. Such amounts theretofore segregated may be applied to the First Monthly Installment Payment by agreement of the parties. Further, the occurrence of the Lump Sum Payment and the Tax Payment shall not negate, and Ameris Bank does not waive, Ameris Bank's lien upon the Wedding Cake Mansion Receipts that are received after the date that the Lump Sum Payment and the Tax Payment are made; however, so long as and on the condition that each Monthly Installment Payment is timely made and no Event of Default has occurred, Ameris Bank agrees that (a) the Debtors shall no longer have any obligation to segregate Wedding Cake Mansion Receipts, and (b) Ameris Bank shall forbear from making any and all objections to the use of any Cash Collateral whatsoever, from any source, after the date on which the Lump Sum Payment and the Tax Payment have both been timely made. Payment of all payments Debtors are required to make under this Agreement shall serve to extinguish and terminate any and all claims, liens or encumbrances held by Ameris Bank on Cash Collateral of the Debtors generated by any source whatsoever.

12. **Release by the Debtors.** Except as otherwise provided in this Agreement, the Debtors release and forever discharge Ameris Bank and its agents, employees, attorneys, affiliates, successors, assigns, insurers, and other representatives from any and all claims, demands, damages, actions, causes of action, and obligations of whatever nature, at law or in equity, whether statutory, common law, or other, that the Debtors may presently now have, ever have had, or may in the future have, occurring from the beginning of time through the date of this Agreement, and whether known or unknown. Further, the Debtors shall seek to dismiss the Adversary Proceeding with prejudice, each party to bear its own costs, within five (5) business days of the Effective Date.

13. **Ameris Bank's Release of Junior Liens.** Upon Ameris Bank's receipt of the Lump Sum Payment and the Tax Payment, Ameris Bank shall be deemed to have irrevocably released, waived, and discharged any liens, rights, titles, and interests it may have regarding 109 West Jones Street, 54-56 Captains View, and 709-711 Barnard Street (collectively, the "Junior Liens"). Further, Ameris Bank shall cooperate as reasonably necessary with the Debtors to document the cancellation of the Junior Liens.

14. **No Waiver of Deficiency Claim.** Except as otherwise provided in this Agreement to the contrary, Ameris Bank expressly does not waive any deficiency claim against either of the Debtors.

15. **Plan of Reorganization.** Ameris Bank shall vote to accept a Plan proposed by the Debtors but only so long as the proposed Plan complies with the terms and conditions of this Settlement Agreement and other applicable provisions of the Bankruptcy Code.

16. **Events of Default.** Each of the following shall constitute an event of default ("Event of Default") under this Agreement:

> (a) The dismissal of the Debtors' Bankruptcy Cases or conversion of the Bankruptcy Cases to chapter 7 cases, other than upon motion by Ameris Bank;
>
> (b) The failure to comply with any other provision of this Agreement.

17. **Notice of Default and Opportunity to Cure.** Upon the occurrence of an Event of Default, Ameris Bank is required to deliver written notice (a "Notice of Default") to the Debtors at the addresses set forth below. An Event of Default may be cured by Debtors if Debtors cure the default within five (5) Business Days of the delivery of Ameris' Notice of Default (for purposes of this paragraph, the term "Business Days" shall be defined as including each day of the week other than Saturday and Sunday). If an Event of Default occurs and Debtors do not cure it in the time period described in this paragraph, Ameris Bank shall be entitled to exercise its Rights Upon Default (as hereinafter defined).

18. **Rights Upon Default.** Upon an Event of Default, the sending of the Notice of Default, and Debtors' failure to cure such Event of Default in the time period described above, the Parties agree that, without further order of the Bankruptcy Court, the Forbearance Period shall terminate and Ameris Bank may exercise all of the rights and remedies provided for in this

Agreement, including the following rights upon default (each, a "Right Upon Default" and collectively, the "Rights Upon Default"):

>   (a) Ameris Bank may instruct the Escrow Agent to deliver the Wedding Cake Mansion Deed to Ameris who shall then be entitled to record the Wedding Cake Mansion Deed in the real property records of the Clerk of the Superior Court of Chatham County, Georgia and enforce its rights, including but not limited to marketing the Wedding Cake Mansion for sale and applying any net sales proceeds against the Indebtedness;
>
>   (b) Ameris Bank may enforce its rights under the Wedding Cake Security Deed (as it may be modified), including the power of sale, and apply any net sales proceeds against the Indebtedness. In the event Ameris Bank elects to sell the Wedding Cake Mansion under the power of sale contained in the Wedding Cake Security Deed, Ameris Bank shall be entitled take all steps necessary to preserve its deficiency;
>
>   (c) Ameris Bank may continue the Georgia District Court Litigation, or dismiss the Georgia District Court Litigation and initiate a new lawsuit in the state courts of Chatham County, Georgia, and enforce any judgment it might obtain *in rem* against the Wedding Cake Mansion, with *in personam* enforcement stayed until the Bankruptcy Cases are resolved; and/or
>
>   (d) Ameris Bank may object to the use of any Cash Collateral whatsoever, from any source, notwithstanding the provisions of Par. 11 and the timely payment of the Lump Sum Payment and the Tax Payment.

   19.   **Right of First Refusal.** In the event Ameris Bank exercises its Right upon Default to receive the Wedding Cake Mansion Deed, or to enforce its rights under the Wedding Cake Security Deed, Long, or her designee, shall have the right of first refusal to purchase the Wedding Cake Mansion (the "Right of First Refusal") in the following manner:

>   (a) (i) If Ameris Bank elects to receive and record the Wedding Cake Mansion Deed, then Ameris Bank shall notify Long in writing of the price at which Ameris intends to market the Wedding Cake to the general public (the "Offer Price"). Long shall then have the right to purchase the Wedding Cake Mansion at the Offer Price for a period of sixty (60) calendar days following delivery of the written notification of the Offer Price. Following the expiration of this sixty day period, Ameris Bank may raise or lower the Offer Price without notice to Long. Long may also make a subsequent written demand upon Ameris no more than twice per year for information as to the current Offer Price, and Ameris shall thereafter have 15 calendar days to inform Long, in writing, of such Offer Price. Upon receipt of such a written notification, Long shall have 10 days to purchase the Wedding Cake Mansion at the current Offer Price given to her by Ameris; or

8

      (ii) If Ameris Bank elects to sell the Wedding Cake Mansion pursuant to the power of sale contained in the Wedding Cake Security Deed, Ameris Bank shall give notice to Long of the price at which Ameris Bank intends to bid (the "Bid Price") at least 15 days prior to the sale. Long shall have the right to purchase the Wedding Cake at the Bid Price for 14 days following delivery of the notification of the Bid Price;

  (b) The Debtors may exercise their Right of First Refusal by delivering a certified check made payable to Ameris Bank and delivering it to Jason Pedigo, Ellis, Painter, Ratterree & Adams, LLP, 2 East Bryan Street, 10th Floor, Savannah, Georgia 31401 in the time described above. If Long exercises her Right of First Refusal, Ameris Bank will release, waive, and discharge any liens, rights, titles, and interests it may have regarding the Wedding Cake Mansion and shall cooperate as reasonably necessary with Long to document this release, waiver, and discharge;

  (c) In the event Long does not exercise the Right of First Refusal in the time provided in this Agreement, the Right of First Refusal is automatically terminated and of no effect, and Long shall have no standing to object, delay, or otherwise impede the sale of the Wedding Cake Mansion through litigation or otherwise; and

  (d) Ameris Bank shall have the right to deal with only one entity in connection with the exercise of the Right of First Refusal, and, in the absence of a writing from Long naming the designee with whom Ameris Bank shall exclusively deal, Ameris Bank may direct all communications only to Long and may refuse to accept all communications not originating from Long

    20. **Debtors' Rights Upon Payment in Full.** Upon payment of the Lump Sum Payment, the Tax Payment, and each of the Monthly Installment Payments (as described by Paragraph 6 of this Agreement), (1) Ameris shall instruct the Escrow Agent to deliver the Quitclaim Deed to Long, and (2) the Wedding Cake Mansion Deed shall be delivered to Long unrecorded. Following payment of the Lump Sum Payment, Tax Payment, and the Monthly Installment Payments, Ameris shall retain its lien upon the furniture, fixtures, and equipment which are subject to the Wedding Cake Security Deed, the Commercial Security Agreement, and the Commercial Security Agreement Related Documents ("FF&E").

    21. **Incorporation of Liberty Street Security Deed and Wedding Cake Security Deed.** Debtors adopt, ratify, and incorporate by reference the Liberty Security Deed and the Wedding Cake Security Deed into this Agreement. Except as modified by this Agreement, while either of the relevant properties continued in Debtors' possession or control, Debtors shall comply with the provisions in the Liberty Security Deed and the Wedding Cake Security Deed concerning the Grantor's duty to maintain, compliance with environmental laws, nuisance and waste, removal of improvements, the lender's right to enter, compliance with governmental requirements, the duty to protect, maintenance of insurance, application of insurance proceeds, and the Grantor's report on insurance.

22. **Disputes Concerning Escrow.** In the event of a dispute between Debtors and Ameris Bank, the Escrow Agent, in its sole discretion, may elect to tender into the registry or custody of a court of competent jurisdiction the documents tendered into escrow by effect of Paragraph 4, together with any legal pleadings as it may deem appropriate, and thereupon be discharged from all further duties and liabilities under this Agreement.

23. **Payment Logistics.** Debtors shall make all payments required under this Agreement by certified check made payable to Ameris Bank and delivered to Jason Pedigo, Ellis, Painter, Ratterree & Adams, LLP, 2 East Bryan Street, 10th Floor, Savannah, Georgia, 31401. All payments required under this Agreement shall be deemed made on the date of delivery.

24. **Notices.** Any notice, request, or demand given or made under this Agreement, including but not limited to a Notice of Default or notice of Bid Price, shall be in writing and delivered via both email and the United States mail to the recipients at the following applicable addresses. Any such notice, request, or demand shall be deemed delivered and received by Debtors on the day it is emailed and deposited in the United States mail:

| | |
|---|---|
| If to Castle Home: | Castle Home Builders, Inc.<br>c/o Tammy Jo Long, its Reg. Agent<br>815 The Pines<br>Hinsdale, IL 60521<br>info@luxurylivingproperties.com |
| ...with a copy to: | Stephen J. Brown<br>Schuyler Roche & Crisham<br>130 E. Randolph St., Ste. 3800<br>Chicago, IL 60601<br>sjbrown@srcattorneys.com |
| | and to |
| | Michael Faley<br>Schuyler Roche & Crisham<br>130 E. Randolph St., Ste. 3800<br>Chicago, IL 60601<br>mfaley@srcattorneys.com |
| If to Long: | Tammy Jo Long<br>815 The Pines<br>Hinsdale, IL 60521<br>tj@luxurylivingtybee.com |

10

|  |  |
|---|---|
| ...with a copy to: | Stephen J. Brown<br>Schuyler Roche & Crisham<br>130 E. Randolph St., Ste. 3800<br>Chicago, IL 60601<br>sjbrown@srcattorneys.com |
| If to Ameris Bank: | Jason C. Pedigo<br>Ellis, Painter, Ratterree & Adams LLP<br>2 East Bryan Street, 10th Floor<br>Savannah, Georgia 31401<br>pedigo@epra-law.com |
| ...with a copy to: | George R. Mesires<br>Ungaretti & Harris LLP<br>70 W. Madison Street, Suite 3500<br>Chicago, IL 60602<br>grmesires@uhlaw.com |

Any addresses or names specified above may be changed by a notice given by the party desiring the change to the other parties in accordance with the foregoing provisions.

[INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Castle Home, Long, and Ameris Bank have caused this Agreement to be executed and delivered as of the day and year first written above.

CASTLE HOME BUILDERS, INC.

By: _____
    Name: Tammy Jo Long
    Its: President

TAMMY JO LONG

By: _____
    Name: Tammy Jo Long

Subscribed and sworn to before me this 12TH day of December, 2011.

_____
Notary Public

"OFFICIAL SEAL"
CHARLOTTE M CASTINE
Notary Public, State of Illinois
My Commission Expires June 08, 2015

Subscribed and sworn to before me this 12TH day of December, 2011.

_____
Notary Public

"OFFICIAL SEAL"
CHARLOTTE M CASTINE
Notary Public, State of Illinois
My Commission Expires June 08, 2015

AMERIS BANK

By: _____
    Name: _____
    Its: _____

Subscribed and sworn to before me this ____ day of December, 2011.

_____
Notary Public

745897v6
008136-000008

IN WITNESS WHEREOF, Castle Home, Long, and Ameris Bank have caused this Agreement to be executed and delivered as of the day and year first written above.

CASTLE HOME BUILDERS, INC.                    TAMMY JO LONG

By:_____            By:_____
    Name: Tammy Jo Long                            Name: Tammy Jo Long
    Its:    President

Subscribed and sworn to before me this ____    Subscribed and sworn to before me this ____
day of December, 2011.                         day of December, 2011.

_____                _____
Notary Public                                  Notary Public


AMERIS BANK

By:_____
    Name: PATRICK BRODMANN
    Its:    V.P.

Subscribed and sworn to before me this 12th day of December, 2011.

_____
Notary Public

[Notary Seal: JENNIFER H. ___, NOTARY PUBLIC, My Comm. Exp. Nov. 16, 2013, CHATHAM COUNTY, GA]

745897v6
008136-000008