UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CASTLE HOME BUILDERS, INC., et al. | ) | Case No. 11-19428 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Jacqueline P. Cox |
| | ) | |

**Amended Memorandum Opinion**
**(dkt. no. 372)**

This matter is before the Court for ruling on the Motion of the Reorganized Debtor to Enforce Confirmation Order and For the Imposition of Sanctions ("Motion"). The Reorganized Debtor complains that notwithstanding modified mortgage terms set forth in the Confirmed Plans, Everhome Mortgage ("Everhome") continues to bill for a prepetition mortgage on property located at 109 W. Jones Street, Savanna, Georgia ("Jones Property"). For the reasons noted below, the request for Sanctions is Granted in part and Denied in part.

I.    **Jurisdiction**

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(a) which provides that federal district courts have original and exclusive jurisdiction of all cases under the Bankruptcy Code, Title 11 of the United States Code. 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a), which refers its bankruptcy cases to this Court.

Chapter 11 cases generally involve the restructuring of debt through the proposal and confirmation of a plan of reorganization. The concern herein is the extent of the jurisdiction of the bankruptcy court after plan confirmation, but prior to the closing of a chapter 11 case. There

are no explicit procedural or statutory rules governing a bankruptcy court's subject matter post-confirmation jurisdiction. *In re Kmart Corp.*, 359 B.R. 189, 195 (Bankr. N.D. Ill. 2005). Following plan confirmation, the subject matter jurisdiction of a bankruptcy court is "sharply reduced." *In re Kmart Corp.*, 359 B.R. at 195. "This does not mean that there is no post-confirmation bankruptcy jurisdiction and the functions of the bankruptcy court are at an absolute end. Rather, the bankruptcy court retains jurisdiction to protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation." *Id.* at 195. *See also In re Lazy Days' RV Center, Inc.*, 724 F.3d 418, 423 (3d Cir. 2013) (issue of validity of an anti-assignment clause was properly decided by the bankruptcy court after reopening because the bankruptcy court was well-suited to provide the best interpretation of its confirmation order; the bankruptcy court found to have jurisdiction to interpret and enforce its own orders); *In re Brown's Chicken & Pasta, Inc.*, 503 B.R. 86, 88-89 (Bankr. N.D. Ill. 2013) (bankruptcy court has jurisdiction to determine the scope and effect of its confirmation order).

The Reorganized Debtor filed the Motion herein pursuant to 11 U.S.C. § 1142(b), "which empowers the court to direct the debtor and any other necessary party to perform acts 'necessary for the consummation of the plan.'" *Kmart*, at 195. Section 1142(b) states:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). *See also In re Emerald Casino*, Inc., 334 B.R. 378, 386-87 (N.D. Ill. 2005) (recognizing a bankruptcy court's broad authority to order parties to comply with terms of a confirmed plan of reorganization).

A court's exercise of authority under § 1142(b) is limited to ensuring that reorganization plans are implemented and protecting estate assets devoted to implementation of the confirmed plan. *Kmart*, at 196-97.

To determine whether a bankruptcy court has post-confirmation jurisdiction over a dispute, "the court must first determine that 'the matter [has] a close nexus to the bankruptcy plan or proceeding . . . [and] second, the plan must provide for the retention of jurisdiction over the dispute.'" *In re Ventilex USA, Inc.*, 509 B.R. 140, 143 (Bankr. S.D. Ohio 2014) (internal citations omitted). "In determining whether a close nexus exists courts look to whether adjudication will require interpretation of the chapter 11 plan, whether it will affect the estate or the reorganized debtor and whether adjudication will interfere with the implementation of the chapter 11 plan." *Ventilex*, 509 B.R. at 143.

The relief requested herein has a close nexus to the Debtors' Plans ("Plans").[1] To resolve the Motion the Court will be required to interpret the parties' respective rights and obligations as established by the confirmed plans. The Court's adjudication of this dispute will assist with the implementation of the Plans by ensuring that payments made by the Reorganized Debtor will be properly applied to the principal balance due Everhome, the respondent herein.

As to the second requirement, each Plan expressly provides for the retention of jurisdiction to enforce and interpret its terms and conditions.

Section 12.1 of the Confirmation Order states, in part:

> Claims and Actions. Notwithstanding entry of the Confirmation Order, the Bankruptcy Court will retain jurisdiction of all matters arising out of: and related to, the Reorganization Case and this Plan pursuant to § [sic] 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:
>
> 12.1.3 to enforce and interpret the terms and conditions of this Plan
>
> 12.1.12. to determine all controversies, suits and disputes that may arise in connection

---

[1] Two Plans were confirmed herein. The Reorganized Debtor(s) is defined as both the Managing LLC and the Holding LLC, together and collectively. *See* Confirmation Order, dkt. no. 360, Paragraph 1.2.58 of the Castle Home Builders, Inc. Plan, Exhibit A, p. 7 and Paragraph 1.2.59 of the Tammy Jo Long Plan, Exhibit B, p. 7.

with the interpretation, enforcement or consummation of this Plan.

12.1.14. to issue such orders in aid of execution of this Plan to the extent authorized by Section 1142 of the Bankruptcy Code.

*See* Order Confirming Plans of Reorganization, Case No. 11-19428, dkt. no. 360, pp. 62-63.

The Court determines that it has jurisdiction to enter a final order herein.

## II. Facts and Background

On May 6, 2011, Debtors Castle Home Builders, Inc. and Tammy Jo Long filed petitions for relief under Chapter 11 of the Bankruptcy Code. *See* Bankruptcy Case Nos. 11-19428 & 11-19484. On May 25, 2011, the Court entered an order authorizing joint administration of the cases. *See* Order at dkt. no. 38.

The Debtors' prepetition business operations involved the purchasing, renovation and operation of multiple historic houses in Savannah, Georgia. The homes were rented to wealthy travelers and tourists as short to mid-term luxury accommodations. *See* Second Amended and Restated Chapter 11 Disclosure Statement of Tammy Jo Long, Case # 11-19428, dkt. no. 302, p. 5 of 46. The Debtors' stated goal in these bankruptcy proceedings was to modify the mortgages that existed on various business properties and to bring serviceable debt back in line with post-recession appraised value. *See* Motion, dkt. no. 372, p. 2. After spending nearly two years negotiating with mortgage lenders, in May and June, 2013, the Debtors proposed separate plans of reorganization; all voting classes voted in favor of the Plans. *See* First Amended Ballot Report, dkt. no. 345.

The Plans contemplated the retitling of Debtors' business properties to the name of the newly formed entity, Luxury Properties, LLC, which entity would be primarily responsible for making all required plan payments, including payments for the mortgage on the Jones Property.

In particular, the Second Amended Chapter 11 Disclosure Statement of Castle Home Builders provides, in relevant part:

> Under both the Debtor's Plan and the separate plan to be simultaneously filed by TJL, all seven Business Properties currently titled to either TJL or CHB will be retitled exclusively to Luxury Properties LLC (the "Managing LLC"). The Managing LLC will be an Illinois "series" LLC that will hold title to and manage all seven Business Properties, one series per property. The Managing LLC will then be primarily responsible for operating such assets and making all required payments under both the Debtor's Plan as well as TJL's plan.

*See* Second Amended Chapter 11 Disclosure Statement of Castle Home Builders, p. 6 of 44, dkt. no. 300.

The Second Amended Chapter 11 Disclosure Statement of Tammy Jo Long similarly provides:

> Under both the Debtor's Plan and the separate plan to be filed by CHB, all seven "Business Properties . . . currently titled to either TJL or CHB will be retitled to Luxury Properties LLC (the "Managing LLC"). The Managing LLC is an Illinois "series" LLC that will hold title to and manage all seven Business Properties, one series per property. The Managing LLC will then be primarily responsible for operating such assets and making all required payments under both the Debtor's Plan as well as CHB's plan.

*See* Second Amended Chapter 11 Disclosure Statement of Tammy Jo Long, pg. 6 of 46, dkt. no. 302.

The Jones Property is among the seven "Business Properties" provided for under the Plans.

The Plans also provide that 100% of the equity interests in Luxury Properties, LLC would be held by Luxury Living Properties Holding LLC (together with Luxury Properties, LLC, the

"Reorganized Debtor"). *See* Second Amended Disclosure Statement of Tammy Jo Long, dkt. no. 302, p. 8 of 46.

On June 27, 2013 ("Confirmation Date"), the Court entered an Order Confirming Debtors' Plans of Reorganization ("Confirmation Order"). On August 8, 2013, the Court restated the Confirmation Order nunc pro tunc to the Confirmation Date. *See* Order, dkt. no. 360.[2]

The portion of the Confirmation Order pertaining to the Jones Property states as follows:

Class 2 Secured Claims of Bank of America:[3]

> Debtor's belief as to the current market value of Jones and Oceanfront Oasis is found at Appendix 1. If BofA disagrees with such value, the parcels will be re-evaluated in order that each mortgage can be divided into secured and unsecured portions under 506(a) by agreement (or be deemed entirely unsecured, in the case of junior mortgages on land whose value is less than the amount outstanding under the first mortgage). Each of the above two mortgages will be re-amortized and recast, and will secure a new and lower principal amount (plus capitalized Interest), but under a shorter 10-year amortization schedule. Prepetition debt which is revealed to be unsecured after a 506(a) evaluation will result in a Class 4 claim. Both of these properties are "Business Properties," and, accordingly, the *responsibility for making future payments under this Plan shall belong exclusively to the Reorganized Debtor and shall not be the personal liability of Ms. Long.* Payments will begin again in the first full month after the month in which the Effective Date falls. . . .

---

[2] In the case of Debtor Castle Home Builder, the plan of reorganization is titled "Third Amended Plan and Restated Plan of Reorganization" and is dated June 19, 2013. *See* dkt. no. 333. In the case of Debtor Tammy Jo Long, the plan of reorganization is titled "Second Amended and Restated Plan of Reorganization" and is dated April 3, 2013. *See* dkt. no. 303.

[3] On the Petition date, the mortgage on the subject Jones Property was serviced by Bank of America. In July, 2013, a servicer transfer occurred and Everhome Mortgage became the servicer of the loan for the Jones Property. *See* Everhome Mortgage Response Brief, p. 1, dkt. No. 394; *See* March 5, 2014 Email, Reorganized Debtor's Trial Exhibit 40.

> With the exception of payments in connection with the Hinsdale Residence (which will remain Ms. Long's exclusive responsibility and personal liability), *all other Class 2 payments will be the exclusive responsibility and liability of the Reorganized Debtor under this Plan.*

*See* Confirmation Order, dkt. no. 360, pp. 50-51 of 65.

Bank of America, Holder of a Class 2 claim, voted to accept the Debtors' Plans of Reorganization. *See* Ballots of Bank of America, dkt. nos. 321, 322.

### III. Discussion

In the Motion, the Reorganized Debtor complains that notwithstanding the modified mortgage terms set forth in the Confirmed Plans, Everhome, servicer for the Bank of America loan, continues to bill the Reorganized Debtor for the prepetition mortgage without making changes to the principal amount, new interest rate, new amortization period or new borrower name in blatant disregard of Debtors' Confirmed Chapter 11 Plans. *See* Motion, dkt. no. 372, p. 2. Fifteen months after confirmation, the Jones Property is still listed in Tammy Jo Long's name on loan documents generated by Bank of America, rather than in the name of the newly formed entity, Luxury Properties, LLC.

The Reorganized Debtor requests three forms of relief:

(1) Entry of an order consistent with 11 U.S.C. § 1142(b) compelling Everhome Mortgage to realign and modify their loan files to mirror the terms of the Reorganized Debtor's Confirmed Plans of Reorganization (e.g. interest rate, correct mortgagor name, amortization period, principal amount outstanding).

(2) Entry of an order compelling legal fees for time spent litigating this issue and appropriate sanctions.

(3) Entry of an order imposing punitive damages.

*See* Motion, dkt. no. 372, p. 6.

On June 3, 2014, the Court held an evidentiary hearing on the issue of liability. The Court also considered the Reorganized Debtor's Motion in Limine 2 to bar Everhome from presenting evidence in connection with the Motion to Enforce and for the Imposition of Sanctions. *See* Motion in Limine No. 2, dkt. no. 438. At the hearing, the Reorganized Debtor presented evidence proving that Everhome's corporate representative, Mr. Bradley Lee, made no attempt to produce documents in response to the Reorganized Debtor's production request. *See* Debtors' Trial Exhibit 45, May 28, 2014 Deposition Transcript of Mr. Bradley Lee, 20-24.
At his deposition,

> Mr. Bradley was asked:
> "Did you personally do anything to gather any documents responsive-- that might be responsive to these requests for production?
> He answered:
> "I did not."

As a result, the Court barred Everhome from presenting any evidence in connection with the Motion. *See* Order On Reorganized Debtor's Motion in Limine Number 2, dkt. no. 443. At the conclusion of the evidentiary hearing, the Court granted the Reorganized Debtor's Motion to Enforce and continued the request for sanctions to a future hearing date.

In accordance with the Court's authority under 11 U.S.C. § 1142(b), it entered a June 23, 2014 Order that required Everhome to immediately come into compliance with the Confirmed Plans of Reorganization through implementation of the following:

> (a) The only borrower, mortgagor or obligor name appearing on any electronic or hardcopy monthly account statement ("Account Statements"), and on any other computer file or other operational record maintained by Everhome Mortgage with respect to its Account Number ******4923 (the "Loan Account"), shall be "Jones Street Suites Luxury Properties LLC";

(b) "Outstanding Principal" in every Everhome Mortgage Account Statement, ledger entry, or computer system used to maintain and record the principal amount outstanding under the Loan Amount shall be reset to $577,106.52, unless another figure is agreed to in writing by the parties or the above number changes by effect of the payments received, but under no circumstances shall Everhome Mortgage capitalize to principal other amounts allegedly outstanding without the written consent of Reorganized Debtor;

(c) Everhome Mortgage shall waive, release, and purge from the Account Statements all late fees, default charges, delinquency charges, and other similar amounts that have accrued with respect to the Loan Account since July 1, 2013 whether reflected on the Account Statement or not;

(d) Everhome Mortgage shall waive, release, and purge from the Account Statements all interest or default interest that has accrued since July 1, 2013 on any amount, that consistent with this Order, should not have been charged to the Loan Account in the first place, including all late fees, default interest, unauthorized capitalizations to principal, etc;

(e) Everhome Mortgage shall waive, release and purge from the Account Statements all amounts or charges related to the unilateral purchase of insurance by Everhome Mortgage covering the property located at 109 West Jones Street located in Savannah, Georgia, be it forced placed insurance or otherwise, that have accrued to the Loan Account since July 1, 2013;

>  (f) Everhome Mortgage shall indicate in its records and in the Accounts Statements that Reorganized Debtor is not and has not been in payment default since July 1, 2013, and Everhome Mortgage shall make all appropriate notifications to third-party credit reporting agencies as are necessary to ensure that neither Tammy Jo Long nor Reorganized Debtor, nor Jones Street Suites Luxury Properties LLC is reported to be in payment default or otherwise delinquent in any way;
>
>  (g) Everhome Mortgage shall provide, upon request of the Reorganized Debtor, suitable backup documentation and other evidence supporting any and all claims for reimbursement for tax outlays, insurance outlays, or other items charged or to be charged to the Loan Account other than principal and interest, including all items allegedly comprising a negative $20,000 escrow balance described by counsel to Everhome Mortgage in open court on June 3, 2014.
>
>  (h) Everhome Mortgage shall send all Account Statements to "Jones Street Suits Luxury Properties LLC" c/o Tammy Jo Long at her address . . . and
>
>  (i) Nothing in this Order shall prevent the parties from making different arrangements or account adjustments if so specifically agreed to in writing that is physically signed by the parties (electronic correspondence not being sufficient for this purpose).

*See* Order Granting Motion to Enforce, Case No. 11-19428, dkt. no. 445.

    The Court further ordered Everhome to pay the Reorganized Debtor (Luxury Properties, LLC) $35,839.38 in attorneys' fees and costs incurred by the Reorganized Debtor for its efforts to get Everhome to comply with the terms of the Confirmation Order ("Fee Order"). *See* Order with Respect to Reorganized Debtor's Fees & Costs, dkt. no. 449. Payment of those fees was

due forty-five days after the entry of the July 10 Fee Order, on August 25, 2014.

To date, Everhome has not complied with the Fee Order, nor has it conformed the loan documents to the economic terms of the Reorganized Debtor's Confirmed Plans or otherwise fully complied with the Court's June 23, 2014 Order. As a result, the Reorganized Debtor filed a Motion for Rule to Show Cause against Everhome Mortgage which the Court will rule on by separate order. *See* Motion for Rule to Show Cause, dkt. no. 453.

### A.  Request for Actual and Punitive Damages

The Court now considers the Reorganized Debtor's request for actual and punitive damages. A confirmed chapter 11 plan of reorganization "binds the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor . . . ." *See* 11 U.S.C. § 1141(a). "Provided that adequate notice and due process are afford to affected parties . . . such orders bind the parties so affected until such time as the orders are altered or amended by the issuing court, overturned on appeal or otherwise abrogated." *In re Morrow*, 495 B.R. 378, 388 (Bankr. N.D. Ill. 2013). A creditor that fails to object to plan provisions during the confirmation process cannot later challenge its terms. *In re UAL, Corp.*, 635 F.3d. 312, 321 (7th Cir. 2011) (citing *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.)* 81 F.3d 1310, 1317 (4th Cir. 1996)).

"The confirmation order and discharge injunction are critical elements of the fresh start that is afforded to debtors in the Bankruptcy Code. It is essential that creditors respect these court orders and permit debtors to benefit from the rights and protections which they are entitled." *Turner v. Mellon Mortgage Co. (In re Turner)*, 221 B.R. 920, 924 (Bankr. M.D. Fla. 1998) (quoting *In re Thomas*, 184 B.R. 237 (Bankr. M.D. N.C. 1995)).

"Courts have inherent and statutory powers to punish a party that fails to comply with the

terms of their orders, and to coerce compliance with such orders." *Baldwin Piano, Inc. v. Deutsche Wurlitzer, GmbH*, No. 03 C 2105, 2004 WL 1323940, at *1 (N.D. Ill. June 15, 2004) (citing *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001)). The Court is empowered by 11 U.S.C. § 105 to ensure compliance with the terms of its orders.

### 1.  Actual Damages

An injured party seeking damages must establish the amount of damages with reasonable certainty. *Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir. 1992). "A party seeking damages must prove them using methodologies that need not be intellectually sophisticated." *In re Vasquez*, 221 B.R. 222, 228 (Bankr. N.D. Ill. 1998) (citing *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir.1992)). However, the amount requested must be based on evidence rather than mere speculation or guesswork. *Vasquez*, at 228 (internal citation omitted).

The Reorganized Debtor asserts that it is entitled to actual damages in the amount of $100,000 for Everhome's conduct in failing to comply with the terms of the Confirmation Orders.

In defense, Everhome makes much ado about the fact that the Plans imposed "no affirmative duty" on Everhome to change loan documents or payment coupons to list the Reorganized Debtor rather than Tammy Jo Long as the borrower on the loan.[4] June 3, 2014 Trial Transcript ("Transcript"), 21- 22, dkt. no. 455. Everhome's argument ignores the fact that

---

[4]At the June 3 and September 10 hearings on the Motion, counsel for Everhome seemed to conflate the Reorganized Debtor's request that the Jones Property loan documents be changed, with the Plans' provisions concerning the retitling of the business properties. Transcript, 21-22, 25. *See* Second Amended Chapter 11 Disclosure Statement of Castle Home Builders, dkt. no. 300, p. 6. However, the relief requested herein deals solely with what is reflected in Everhome's loan statements and payment coupons, not the requirement to convey title to the Jones Property. *See* Motion, p. 6, n.2.

this Court has the authority to direct parties bound by confirmation orders to execute loan documents in order to aid in the plan's execution. *See, e.g. In re Chatham Parkway Self Storage, LLC*, 507 B.R. 13, 17 (S.D. Geor. 2014). This is true even where the plan does not specifically impose an "affirmative duty" on a party to execute such documents. Indeed, a bankruptcy court recently ordered the execution of loan documents, noting that "[i]ncluding such detailed material terms of repayment in the Plan coupled with a provision requiring the parties to execute Loan Documents based on these terms sufficiently demonstrates to the Court what understanding the parties reached." *Chatham*, 507 B.R. at 17. Similarly here, the Debtors' Plans expressly lay out that the Reorganized Debtor would be responsible for payment of the loan on the Jones Property. *See* dkt. no. 360, pp. 50-51 of 65. Bank of America failed to raise an objection to its wording and ultimately voted in favor of the Plans.

Consistent with what the parties' apparent intentions were when negotiating the terms of the Plans, the Court has the authority to order the execution of documents to further the Plans' implementation, which includes changing the name reflected on loan files and repayment coupons to reflect the Reorganized Debtor's obligation to repay the loan. This is precisely what the Court contemplated in its June 23, 2014 Order, of which Everhome remains in noncompliance.

The Court determines that an award of actual damages is aptly supported by the record.

The evidence shows that for the months following entry of the Order Confirming the Debtors' Plans of Reorganization, the Reorganized Debtor experienced continual delays and resistence when requests were made to conform loan documents for the Jones Property to the terms of the Confirmation Order. *See* Debtors' Exhibit 17, December 9, 2013 Correspondence; Exhibit 7, October 28, 2013 Correspondence. For example, in March of 2014, nine months after entry of the Confirmation Order, the Reorganized Debtor was told by counsel for Everhome "As I have said before, the name is not going to change." Counsel's remark and Everhome's inaction has deprived the Reorganized Debtor of the benefits provided for in the confirmed

Plans. *See* Debtors' Exhibit 31, dkt. No. 386, p. 12 of 25, March 10, 2014 Email.

Everhome counters that the Reorganized Debtor has not tendered payments and is in violation of the Plans. *See* Everhome's Response at p. 3, dkt. no. 394. The Court finds this argument to be disingenuous at best. After several post-confirmation payments to Bank of America's servicer were incorrectly applied, the Reorganized Debtor began submitting payments into an Interest on Lawyers Trust Account[5] ("IOLTA") for turnover to Everhome once the Reorganized Debtor was assured that those payments would be correctly applied to the principal amount. *See* Reorganized Debtor's Exhibit 3, July 30, 2013 Email Correspondence to Everhome; Debtors' Report to the Court as of September 30, 2013, dkt no. 366, pg. 7 of 15; Exhibit 13, July 30, 2013 Correspondence; Transcript, 44- 45. Given the circumstances, the Reorganized Debtor can hardly be faulted for its reticence to send payments to Everhome, when its loan files did not reflect the Plans' terms. Post-confirmation loan documents and payment coupons issued as recently as May, 2014 incorrectly list "Tammy Jo Long" rather than "Luxury Properties, LLC," as the obligor and Everhome has given no indication that it plans to correct the error. *See* Debtors' Trial Exhibit 11, December 6, 2013 Letter; Debtors' Trial Exhibit 43, May 19, 2014 Mortgage Statement; Transcript, 48-50. The Court has thoroughly examined the evidence in this case, which includes dozens of pages of correspondence between attorneys for the Reorganized Debtor and Everhome. It seems that some of the conduct complained of may be due to confusion created when the loan servicer was changed from Bank of America to Everhome Mortgage. However, that is no excuse for not complying with the terms of the confirmed Plans. Everhome has intentionally defied bankruptcy law. For that reason, the Court will impose sanctions.

At the June 3, 2014 hearing on the Motion, the Court heard the testimony of Tammy Jo

---

[5] The IOLTA program allows interest to be earned on client deposits held in lawyers' pooled trust accounts. Prior to the IOLTA rule, banks paid no interest on client accounts. With IOLTA, that interest that was previously retained by financial institutions is paid to the Lawyers Trust Fund and used to support civil legal assistance to the poor throughout Illinois. *See* Illinois Rules of Professional Conduct 1.15.

Long, manager of the Reorganized Debtor. Ms. Long testified credibly that as a result of her year-long dispute with Everhome, she has been unable to focus on her business and has incurred at least $60,000 in attorney's fees, $10,400 in United States Trustee quarterly fees (representing $2,600 paid per quarter for four quarters), and has suffered a reduction in her personal credit rating. Transcript, 62-64. In addition to suffering a financial loss, Ms. Long testified that the ongoing dispute has adversely affected her health, resulting in stress and weight loss. Transcript, 64-65. Because of the direct harm suffered due to Everhome's failure to comply with the terms of the Plans, Everhome is hereby ordered to pay actual damages in the amount of $100,000.

### 2. Punitive Damages

The Reorganized Debtor also asserts that Everhome's conduct warrants the imposition of a punitive damages award in the amount of $1,000,000.

In support of its request, the Reorganized Debtor relies principally on *Vazquez v. Sears, Roebuck & Co.(In re Vazquez)*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998), a case involving a suit brought by a chapter 7 debtor to enforce the discharge injunction under 11 U.S.C. § 524. Section 524 of the Bankruptcy Code provides that in the case of a debtor entity, the entry of a discharge operates as an injunction against the collection or enforcement of pre-petition debts discharged upon entry of a confirmation order. *See* 11 U.S.C. §§ 524(a) and 1141(d)(5). Where a creditor is found to have violated the discharge injunction, the court may impose punitive damages. *Vazquez*, 221 B.R. at 230.

However, the § 524 injunction is applicable only in cases where a discharge has been entered. Generally, in the case of an individual chapter 11 debtor, no discharge may be entered until completion of all plan payments. Section 1141(d)(5)(A) provides, in part, that "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of

all payments under the plan." 11 U.S.C. § 1141(d)(5)(A). The Reorganized Debtor has not completed all payments under the Plans, nor has a request been made for entry of an earlier discharge as permitted by Bankruptcy Code § 1141(d)(5)(B). Because this Motion involves an individual debtor, Tammy Jo Long, the discharge injunction does not apply. For that reason, the request for punitive damages will be denied.

### IV. Re-titling Order

To further aid in the implementation of the Plans, and in accordance with the Court's authority under § 1142(b) of the Bankruptcy Code, the Court hereby orders the Reorganized Debtor to transfer title of the Jones Property from the name of Tammy Jo Long to Luxury Properties, LLC as contemplated by the Plans. *See* dkt. no. 303, pp. 12, 22 of 32; dkt. no. 333. That transfer shall occur on or before November 17, 2014.

### V. Conclusion

For the reasons noted herein, Everhome Mortgage is hereby ordered to pay actual damages in the amount of $100,000 (in addition to the $35,839.38 fee award) to the Reorganized Debtor on or before November 17, 2014. The request for punitive damages is denied. The Court will hold a status hearing on compliance with the terms of this Order on Thursday, November 20, 2014 at 10:00 a.m.

The Orders entered herein on October 21, 2014 stand.

**DATED:**     October 24, 2014          **ENTER:**    *Jacqueline P. Cox*

_____
**Jacqueline P. Cox**
**U.S. Bankruptcy Judge**